UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESTON FANTROY

                   Plaintiff,

      v.                            Case No. 14-13341
                                     HON. TERRENCE G. BERG
DEAN VANN, et al.              HON. DAVID R. GRAND

                   Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 18)**

Plaintiff Weston Fantroy brings this civil rights action under 42 U.S.C. §
1983 and various state laws against Defendants Police Officer Dean Vann and the
City of Lincoln Park, Michigan. Plaintiff's claims arise from his June 13, 2014
arrest following a traffic stop. (Dkt. 1, ¶¶ 1-6.) Plaintiff contends that Defendant
Vann prevented him from showing that there was no probable cause to arrest him
for driving without a license, and that Defendant Vann nonetheless arrested him in
violation of his Fourth Amendment rights under the Constitution. (Dkt. 1, ¶¶ 7-14,
18.) Defendant now moves for summary judgment on all of Plaintiff's claims. (Dkt.
18.)

Plaintiff's August 27, 2014 Complaint contains six counts. (*See* dkt. 1.) Count
I alleges that Defendant Vann violated Plaintiff's right to be free from arrest
without probable cause under the Fourth Amendment. (Dkt. 1, ¶¶ 15-19.) Count II
alleges that Defendants "willfully, wantonly detained and terrorized Plaintiff,
without justification, provocation or excuse and without consent," amounting to

1

gross negligence. (*Id.* at ¶¶ 20-23.) In Counts III and IV, Plaintiff contends that Defendants are liable for false arrest (*Id.* at ¶¶ 24-25) and false imprisonment. (*Id.* at ¶¶ 26-27.) Count V advances a claim against Defendants for intentional infliction of emotional distress. (*Id.* at ¶¶ 28-30.) Finally, in Count VI, Plaintiff claims under 42 U.S.C. § 1983 that the Defendant City of Lincoln Park is liable as a result of the City's policy, practice, or custom for that violated Defendant Vann's Fourth Amendment rights. (*Id.* at ¶¶ 31-34)

On May 15, 2015, Defendants filed for summary judgment on all of Plaintiff's claims. (Dkt. 18.) The motion was fully briefed as of June 22, 2015.[1] (*See* Dkt. 23.) After carefully reviewing the parties' briefs, all of the testimony and exhibits in the record, and the relevant case law, the Court finds that Defendants are entitled to summary judgment on most of Plaintiff's claims. First, Defendant City of Lincoln Park is entitled to judgment as a matter of law on all of Plaintiff's claims against it. Not only is Defendant City of Lincoln Park is entitled to governmental immunity on all of Plaintiff's state law claims, but Plaintiff has also failed to establish that Defendant Vann's actions were the result of a policy or custom of Defendant City of Lincoln Park.

Second, Defendant Vann is entitled to summary judgment on some of Plaintiff's claims. As to Plaintiff's claims against Defendant Vann for gross negligence and intentional infliction of emotional distress, there is no genuine issue of material fact sufficient to allow these claims to survive summary judgment.

---

[1] After careful review and consideration of the parties' briefs, the Court finds that oral argument would not significantly aid the Court's decision. Accordingly, the motion before the Court will be decided without a hearing. *See* E.D. Mich. LR 7.1(f)(2).

Plaintiff's false arrest, false imprisonment, and §1983 claims, however, must proceed against Defendant Vann because whether he is protected from these claims by qualified or governmental immunity depends upon a contested issue of material fact.

Accordingly, Defendants' Motion for Summary Judgment (Dkt. 18.) will be **GRANTED** as to Plaintiff's claims against Defendant City of Lincoln Park and Plaintiff's gross negligence and intentional infliction of emotional distress claims against Defendant Vann. As to Plaintiff's false arrest, false imprisonment, and §1983 claims against Defendant Vann, Defendants' Motion for Summary Judgment will be **DENIED**.

## I.     FACTUAL BACKGROUND

The Court notes that neither Defendants nor Plaintiff followed the Court's practice guidelines for motions for summary judgment that are available on the Court's website. These practice guidelines provide as follows:

> A Rule 56 motion must begin with a "Statement of Material Facts." Such a Statement is to be included as the first section of the Rule 56 Motion. The Statement must consist of separately numbered paragraphs briefly describing the material facts underlying the motion, sufficient to support judgment. Proffered facts must be supported with citations to the pleadings, interrogatories, admissions, depositions, affidavits, or documentary exhibits. Citations should contain page and line references, as appropriate… The Statement of Material Facts counts against the page limit for the brief. No separate narrative facts section shall be permitted.
>
> The response to a Rule 56 Motion must begin with a "Counter-statement of Material Facts" stating which facts are admitted and which are contested. The paragraph numbering must correspond to moving party's Statement of Material Facts. If any of the moving party's proffered facts are contested, the non-moving party must explain the basis for the factual disagreement, referencing and citing record evidence. Any proffered fact in the movant's

Statement of Material Facts that is not specifically contested will, for the purpose of the motion, be deemed admitted. In similar form, the counter-statement may also include additional facts, disputed or undisputed, that require a denial of the motion.

Both Defendants' Motion for Summary Judgment and Plaintiff's response included separate narrative fact sections in violation of the Court's practice guidelines. While Defendants' "Statement of Facts" was not organized in separately number paragraphs (Dkt. 18, pp. 1-3), Plaintiff's response included a "Counter-statement of Facts" that did not correspond to Defendants' statement (Dkt. 20, pp. 8-9). Without a statement and counter-statement, the parties fail to identify clearly which material facts are subject to dispute.[2] The Court nonetheless conducted a thorough review of parties' briefs, deposition testimony, and exhibits and gleaned the following facts, which are viewed in a light more favorable to Plaintiff as the non-moving party:

On June 13, 2014, Plaintiff was traveling northbound on I-75 near Southfield Road when he was pulled over by Lincoln Park Police Officer Dean Vann for speeding. (Dkt 1, ¶ 7; Dkt. 18, p. 1.) Officer Vann asked Plaintiff to produce his license, registration, and proof of insurance. (Dkt. 1, ¶ 8; Dkt. 18, p. 2.) Plaintiff was driving a rental car and retrieved the appropriate rental paperwork from the glove box. (*See* dkt. 22, Ex. G at 94:25-95:13, 112:7-8; Dkt. 20, p. 8.) Plaintiff then reached into his back pocket and pulled out his wallet, removed his Michigan I.D.

---

[2] *See, e.g.*, *Akines v. Shelby Cnty. Gov't*, 512 F. Supp. 2d 1138, 1147 (W.D. Tenn. 2007) (deeming the defendant's statement of undisputed material facts as having been admitted by the plaintiffs, where the plaintiffs failed to file a counter-statement of material facts, as directed by local rule).

card, and handed his Michigan I.D. card and the rental car paperwork including the registration to Defendant Vann. (Dkt. 22, Ex. G, 111:3-113:18.)

The testimony of parties is in dispute as to what happened next. Plaintiff asserts that his Michigan license, a temporary paper license, was in his cell phone case in the middle console of the car. (*Id.* at 102:22-103:9; 113:2-16.) The cell phone case also functioned as a wallet where Plaintiff could "put his credit cards." (*Id.* at 113:7-8.) Plaintiff further contends that he repeatedly told Defendant Vann that he had a valid driver's license and that it was in the middle console, but Defendant Vann would not let him retrieve it. (*Id.* at 113:2-16.) Officer Vann testified that nothing occurred during the stop that indicated Plaintiff had his license; Plaintiff had only his Michigan ID and registration, but no license. (Dkt. 18, Ex. D, ¶¶ 8-13.) Officer Vann denies that Plaintiff repeatedly asked to be allowed to present his paper license from inside the center console of the vehicle. (*Id.* at ¶¶ 11-13.)

Defendant Vann arrested Plaintiff for violating MCL § 257.311; which requires anyone operating a vehicle to have a valid operator's license in their immediate possession and to display it in this kind of situation upon the officer's request. (Dkt. 18, Ex. C, p. 2.) While patting Plaintiff down during the arrest, Defendant Vann found $1,560 in cash in Plaintiff's pants pocket. (Dkt. 18, Ex. C, p. 2; Dkt. 20, p. 9.) Plaintiff gave various explanations for how he obtained this money, informing Defendant Vann that the money was from a legal settlement and from Plaintiff's work in Arizona. (Dkt. 18, Ex. C, p. 2; Dkt. 22, Ex. G, 140:4-12.)

After finding the money, Defendant Vann had K9 Bruno sniff the car for the presence of narcotics odors. (Dkt. 18, p. 2.) Though K9 Bruno did indicate that there was a narcotics odor on the rear passenger door, no contraband was found when the car was searched. (*Id.*) Plaintiff's money was confiscated incident to his arrest. (*Id.*) Once K9 Bruno sniffed the money at the station and indicated that there was a narcotics odor, the currency was subsequently seized for forfeiture. (*Id.* at 3.) The forfeiture action was later dropped and the monies returned to Plaintiff after further investigation by the Prosecutor's Office substantiated "the potential source of the $1,560."(*Id.* at 13.) Plaintiff does not challenge the constitutionality of either dog sniff.

After his arrest, Plaintiff was detained from June 13, 2014 until June 16, 2014. (Dkt. 18, p. 3.)  Plaintiff's prisoner intake and property form lists Plaintiff's property at the time of his arrest as including a cell phone, a jacket, tan sandals, a belt, a necklace, sunglasses, a watch, and $1,560.00 in cash. (Dkt. 22, Ex. G, p. 73.) Defendant Vann searched the car during the period that Plaintiff was detained and did not find  the license (Dkt. 18, Ex. C, ¶ 21), but Plaintiff claims that this is because the license was in his cell phone case that was removed from the car and returned to him when he was released (Dkt. 22, Ex. G, 183:2-12). Plaintiff further claims that he showed his license to the officer who returned his phone case to him while he was being released. (*Id.*) Plaintiff is unable to identify this officer or provide any evidence other than his own testimony in support of this assertion. (*Id.*) After Plaintiff was released on June 16, 2014, the failure to display a license charge

was dismissed, no forfeiture action was pursued, and Plaintiff's money was returned in full. (Dkt. 18, p. 3.) Plaintiff filed his Complaint against Defendants on August 27, 2014. (*See* dkt. 1.)

## II.   ANALYSIS

Defendants have moved for summary judgment on all of Plaintiff's claims. (Dkt. 18.) Defendants argue that they are entitled to summary judgment on Plaintiff's gross negligence claim because it is premised on exactly the same facts as Plaintiff's intentional tort claims. (Dkt. 18, p. 25.) Defendants also argue that Plaintiff has failed to provide enough evidence for a reasonable jury to find that either Defendant is liable for intentional infliction of emotional distress. (Dkt. 18, p. 23.) Regarding Plaintiff's false arrest, false imprisonment, and §1983 claim against both Defendants, Defendants argue that because Defendant Vann had probable cause to arrest Plaintiff, there was no false arrest, false imprisonment, or any constitutional violation. (*See id.* at 22.) In the alternative, Defendants contend that they are protected against the state tort claims by governmental immunity, that Defendant Vann is protected against Plaintiff's §1983 claim by qualified immunity, and that Plaintiff has failed to produce sufficient evidence to hold Defendant City of Lincoln Park liable under §1983. (Dkt. 18, pp. 17-18, 29, 31.)

### A. Legal Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to

a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville,* 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted); *Retting v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the Defendants have the initial burden to show that there is an absence of evidence to support [Plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)).

Upon review of the entire record, there is conflicting evidence that creates a genuine issue of material fact as to Plaintiff's §1983, false arrest, and false imprisonment claims against Defendant Vann. As to Plaintiff's other claims against Defendant Vann, and his claims against the City of Lincoln Park, Defendants are clearly entitled to summary judgment in their favor.

**B. Plaintiff's Claims for Gross Negligence and Intentional Infliction of Emotional Distress against Defendants**

Even viewing the evidence in the light most favorable to Plaintiff, it is clear that no genuine issue of material fact exists concerning Plaintiff's claims for gross negligence (Count II) and intentional infliction of emotional distress (Count V) against Defendants.

As to Count II, Michigan law does not recognize "gross negligence" as an independent cause of action where the underlying facts support an intentional tort allegation. *See Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011) ("[a]lthough establishing that a governmental official's conduct amounted to 'gross negligence' is a prerequisite to avoiding that official's statutory governmental immunity, it is not an independent cause of action."); *see also Latits v. Philips*, 298 Mich. App. 109, 120 (Mich. Ct. App. 2012) ("this Court has rejected attempts to transform claims involving elements of intentional torts into gross negligence.") (quoting *VanVorous v. Burmeister*, 262 Mich. App. 467, 483-84 (Mich. Ct. App. 2004)). Plaintiff's gross negligence claim rests on precisely the same facts as his intentional tort claims of false arrest, false imprisonment, and intentional infliction of emotional distress claims. (Dkt. 1, ¶¶ 7-14.) As such, Plaintiff fails to state a claim for gross negligence under Michigan law. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's gross negligence claim.

With regard to Plaintiff's claim of intentional infliction of emotional distress (Count V), under Michigan law Plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."

9

*Haverbush v. Powelson*, 217 Mich. App. 228, 234 (1996). To satisfy these requirements, the emotional distress must be "so severe that no reasonable man could be expected to endure it." *Id.* at 235 (quoting Restatement 2d Torts §46). To be considered "extreme and outrageous," conduct must be "so outrageous in character and extreme in degree that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized society." *Grochowalski v. DAIIE*, 171 Mich. App. 771, 775-76 (1988). "[L]iability will not be found for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at 776.

Here, there is no evidence that supports the conclusion that Defendants committed any "acts or omissions" that would meet this high standard. Nor does Plaintiff point to any conduct committed by Defendants that would allow a reasonable jury to conclude that they caused Plaintiff to suffer emotional distress so severe that no reasonable man could be expected to endure it. Instead, Plaintiff simply claims that "the acts of the [d]efendants in terrorizing Plaintiff, constituted any extreme, outrageous and intentional infliction of emotional distress which caused him to suffer severe and continuing emotional distress." (Dkt. 1, ¶ 29.) Other than these conclusory allegations, Plaintiff offers no evidence suggesting that either Defendant is liable for intentional infliction of emotional distress.[3]

---

[3] In response to Defendants' interrogatory regarding the severe emotional distress claim that asked Plaintiff to disclose any treatment for "mental, emotional, psychological and/or psychiatric conditions, including substance addiction" received during the last ten years, Plaintiff responded that he had had "counseling with Pastor Claude Allen May of Oasis of Hope Christina Church." (Dkt. 22, Ex. G, pp. 67-68.)

The Court also notes that, in his response to the motion, Plaintiff did not address any of Defendants' arguments with respect to these Counts, raising the question of whether Plaintiff has abandoned these claims. As Plaintiff has failed to adduce sufficient evidence to raise a genuine issue of fact concerning the claims of gross negligence and intentional infliction of emotional distress, Defendants are entitled to summary judgment on Counts II and V.

### C. Defendant City of Lincoln Park's Liability on Counts III, IV, and VI.

Plaintiff alleges in Counts III, IV, and VI that Defendant City Lincoln Park is liable under § 1983 for violating his Fourth Amendment rights and for false arrest and false imprisonment. (Dkt. 1, ¶¶ 24-30.) Defendant takes the position that there is not sufficient evidence to allow a reasonable jury to find that a policy or custom of Defendant City of Lincoln Park caused Plaintiff's rights to be violated under §1983. (Dkt. 18, p. 31.) Defendants also argue that Defendant City of Lincoln Park is shielded from liability for false arrest and false imprisonment by statutory governmental immunity. (*Id.* at 17.) The Court concludes that Defendant City of Lincoln Park is entitled to summary judgment on all Counts.

### 1. Count VI: Liability under § 1983

Plaintiff claims in Count VI that Defendant City of Lincoln Park is liable for failure to adequately and properly hire, train, and supervise its officers so as to prevent the alleged unconstitutional conduct at issue in this case. (Dkt. 1, ¶¶ 31-34.) In order to succeed on such a claim, Plaintiff must show (1) that his constitutional rights were violated and (2) that a policy or custom of the municipality was the

"moving force" behind the deprivation of Plaintiff's rights. *See Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "A municipality cannot be liable for the constitutional torts of its employees; that is, it cannot be liable on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

"A Plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Here, Plaintiff's argument for municipal liability is based on both an alleged policy of inadequate training, and a policy of condoning the unlawful use of force against minorities. (Dkt. 1, ¶ 32; Dkt. 20, p. 20.) The Court will address these arguments in turn.

### a. Failure to Train

Plaintiff claims that Defendant City of Lincoln Park failed to "properly train its officers in the proper manner." (Dkt. 1, ¶ 32-B.) "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training

program." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). However, a systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability. *See Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (citing *Harris*, 489 U.S. at 388).

"The inadequacy of police training only serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (internal quotation omitted). To establish deliberate indifference related to training, a Plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); see also *City of Canton*, 489 U.S. at 388. Plaintiff, however, fails to allege facts sufficient to support municipal liability under § 1983. Plaintiff alleges no more than a single incident, while the law requires a series of incidents that can be linked to a municipal policy. (Dkt. 18, p. 17.)

Despite the case law requiring that Plaintiff allege a pattern or series of incidents of unconstitutional conduct, Plaintiff has provided no such examples. Plaintiff relies on *Penbaur v. City of Cincinnati*, 475 U.S. 469 (1986) for the proposition that this "policy" element does not require Plaintiff to show proof of long-standing practices and that liability may attach via a single incident. (Dkt. 20, p. 20.) The Supreme Court in *Penbaur*, however, did not address the issue of a

13

Plaintiff's burden under a "failure to train" theory. *See* 475 U.S. 469. *Penbaur* held that if the allegation is that a municipality has a facially unconstitutional official policy or legislative enactment, Plaintiff need not demonstrate that the policy or enactment deprived others of their constitutional rights. 475 U.S. at 481 ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.") Consequently, the Sixth Circuit requirement that a Plaintiff must allege past instances of unconstitutional conduct in order to bring a § 1983 suit against a municipality under a "failure to train" theory remains good law. *See Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005) (Plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."). Here, because Plaintiff does not allege any other instances of unconstitutional conduct, there is no genuine issue of material fact raised on the question of whether Defendant City of Lincoln Park is subject to §1983 liability under a "failure to train" theory.

### b. Theory of Acquiescence

Plaintiff's second theory of municipal liability is that Defendant City of Lincoln Park acquiesced to Defendant Vann's conduct. To establish acquiescence by policy makers, a Plaintiff must allege more than isolated instances of police misconduct. *See Tuttle v. Oklahoma City*, 471 U.S. 808, 824 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability. . . unless proof of the

incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.")

Plaintiff cites cases from the First and Fifth Circuits to support the proposition that a single incident like this one is sufficient to establish acquiescence to unconstitutional actions. (Dkt. 20, p. 21.) In *Bordanaro v. McLeod*, 871 F.2d 1151, 1161 (1st Cir. 1989), the First Circuit found that the incident at issue could be used *in conjunction with* other evidence to establish the existence of a policy or custom. The *Bordanaro* Court did not find that a single incident alone constitutes sufficient evidence of a municipal policy or custom, however. *See id.* In *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), the Court did find an isolated incident to be sufficient but the circumstances there were quite different. In that case, a group of police officers were chasing a suspect, the officers fired shots, and an innocent bystander – that the officers knew was in the area – was killed.  The Fifth Circuit concluded that this incident resulted from a policy or custom because six officers were involved and simultaneously opened fire. *See id.* at 165, 171. Unlike the situation in the case before the Court, the Fifth Circuit in *Grandstaff* was not dealing with a single act by a single police officer. *See id.*

In order to hold a municipality liable under § 1983, Plaintiff must show that his constitutional rights were infringed as the result of a policy or custom of the municipality. Plaintiff here advances a "failure to train" theory and an acquiescence theory. Both of these theories of liability require that Plaintiff show a history or pattern of past constitutional violations. Plaintiff has not alleged that any

additional incidents or behavior occurred that could support such a theory, and consequently Plaintiff has failed to present a genuine issue of material fact on the issue of municipal liability. Accordingly, Defendant City of Lincoln Park is entitled to summary judgment with respect to Plaintiff's §1983 claim (Count VI).

### 2. Counts III and IV: State-Law Liability of Defendant City of Lincoln Park

Plaintiff alleges that Defendant City of Lincoln Park is liable for false arrest and imprisonment (Counts III and IV). Defendant City of Lincoln Park responds that it is protected from state tort liability by governmental immunity. (Dkt. 18, p. 17.) It is unclear whether Plaintiff means to hold the City of Lincoln Park liable for false arrest and imprisonment under a theory of direct liability or under a theory *respondeat superior*, but under either theory governmental immunity is applicable. Michigan's Governmental Tort Liability Act ("GTLA") states that "except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws §691.1407 (1); *see also Ross v. Consumers Power Co.,* 420 Mich. 567, 608 (1984). Municipal corporations are governmental agencies and cities are municipal corporations. MCL §691.1401 (a), (d), (e). Consequently, if Defendant City of Lincoln Park was engaged in exercising or discharging a governmental function during the period at issue in this case, it is immune from tort liability unless a statutory exception applies.[4]

---

[4] For example, one statutory exception to this rule is provided in MCL §691.1407(4) which limits a governmental agency's liability when providing medical care or treatment to a patient.

It is settled law in Michigan "that the management, operation and control of a police department is a governmental function and that tort actions against a municipality based on the negligence of its police officers, occurring while the officer is engaged in a discharge of that function are barred by the doctrine of governmental immunity." *Garretson v. City of Madison Heights*, 407 F.3d 789, 800 (6th Cir. 2005); *see also Isabella Cnty. v. Michigan*, 181 Mich. App. 99, 105 (1989); *Hill v. City of Saginaw*, 155 Mich. App. 161, 170 (1986); *Dickey v. Fluhart*, 146 Mich. App. 268, 275-76 (1985). For the kind of conduct at issue here, no statutory exception applies. A theory of direct liability is thus insufficient to survive a motion for summary judgment because Defendant City of Lincoln Park is immune from tort liability under the GTLA.

Defendant City of Lincoln Park cannot be held liable for state tort actions under a theory of *respondeat superior* either. The Michigan Supreme Court has held that "[r]espondeat superior* liability generally can be imposed only where the individual tortfeasor acted during the course of his or her employment and within the scope of his or her authority." *Ross*, 420 Mich. at 567. Michigan courts have held that employees act outside the scope of their authority when they commit intentional torts. *See, e.g., Payton v. City of Detroit*, 211 Mich. App. 375, 392-93 (1995).

Here, Plaintiff alleges only the intentional torts of false arrest and false imprisonment.[5] Even if Defendant Vann were found liable to Plaintiff for false arrest and false imprisonment, Defendant City of Lincoln Park would not be liable

---

[5] As noted above, Plaintiff has failed to raise a genuine issue of material fact concerning his claims for gross negligence and intentional infliction of emotional distress claims.

under a theory of *respondeat superior* because intentional torts are per se outside of the scope of Defendant Vann's authority. *See Payton*, 211 Mich. App. at 393 (holding *inter alia* that cities cannot be held liable for the intentional torts of their employees). Even after construing the pleadings and evidence in a light most favorable to Plaintiff, the allegations do not raise a genuine issue of material fact that could allow a jury to conclude that Defendant City of Lincoln Park is liable on any of Plaintiff's claims against it.

## D. Plaintiff's False Arrest, False Imprisonment and § 1983 Claims against Defendant Vann

Defendants argue that Plaintiff's § 1983 (Count I), false arrest (Count III), false imprisonment (Count IV) claims against Defendant Vann must fail because Defendant Vann had probable cause to arrest and detain Plaintiff on June 13, 2014. (Dkt. 18, p. 10.) They maintain that Defendant Vann had probable cause for the arrest because Plaintiff told him that he did not have his driver's license on him. (*Id.* at 11; Dkt. 23, p. 5.) Plaintiff counters that there was no probable cause because he repeatedly told Defendant Vann that his license was in the center console between the front seats of his car, but Defendant Vann would not let him retrieve it. (Dkt. 22, p. 31, 33.) Accordingly, a genuine issue of material fact exists as to whether Plaintiff did or did not tell Defendant Vann that the license was in the center console of the rental car and whether Defendant Vann refused to allow Plaintiff to retrieve it.

### 1. Counts III and IV: False Arrest and False Imprisonment Claims

18

To prevail on a false arrest claim, Plaintiff must show that Defendant Vann "participated in an illegal and unjustified arrest, and that [he] lacked probable cause to do so." *Walsh v. Taylor*, 263 Mich. App. 618, 626 (2004). To prevail on a false imprisonment claim, Plaintiff must show that there was (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Id.* at 627 (citations and internal quotation marks omitted). In addition to these elements, false imprisonment requires that the restraint occur without probable cause. *Id.* The only element in dispute in this case is whether there was probable cause.

### a.  Probable Cause to Arrest Plaintiff

A police officer has probable cause if "facts and circumstances" within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The circumstances are viewed from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (citations omitted); *cf. Graham*, 490 U.S. at 396 (applying the same test in the context of judging the reasonableness of force used by officers).

Here, there is no question that the only offense Defendant Vann could have believed Plaintiff had committed was driving without a license. Any concern

regarding the money that Plaintiff was carrying, or the odor of narcotics identified by K9 Bruno, only arose after Plaintiff's arrest. (Dkt. 18, p. 2.) The question is whether the facts and circumstances within Defendant Vann's knowledge were sufficient to warrant a prudent person believing that Plaintiff did not have his license.

Viewing the facts in the light most favorable to Plaintiff, the Court must consider Plaintiff's allegations that he repeatedly told Defendant Vann that he had his license with him and that it was in the center console of his car. (Dkt. 22, p. 30.) Plaintiff further alleges that Defendant Vann prevented Plaintiff from getting his license from that location in order to show Defendant Vann. (*Id.*)

Where testimony is in conflict, the jury is the judge of credibility unless the Plaintiff's version of events is "so utterly discredited by the record that no reasonable jury could believe it." *Coble v. City of White House, Tenn.,* 634 F.3d 865, 870 (6th Cir. 2011). Defendant Vann's own testimony is the only evidence that directly contradicts Plaintiff's version of this event. (Dkt. 18, Ex. 5.)  If Defendant Vann is to be believed, then Plaintiff told him that he did not have his license on him. (*See id.* at 4.)  This statement by Plaintiff, coupled with Plaintiff's failure to produce the license, if such alleged fact were proven, would warrant a reasonable and prudent officer to believe that Plaintiff was driving without a license. However, if the evidence were sufficient to prove Plaintiff's version, that Plaintiff proclaimed that he had his license, and that the Defendant Vann refused to allow Plaintiff to retrieve it, an arrest under such circumstances could reasonably be found to be

20

lacking probable cause. When viewed in the light most favorable to Plaintiff, this conflict in testimony creates a genuine issue of fact as to whether there was probable cause for the arrest. Accordingly, summary judgment must be denied on this issue.

### b. Defendant Vann is Not Clearly Entitled to Individual Governmental Immunity under State Law

As to Plaintiff's state law intentional tort claims for false arrest and false imprisonment, Defendants claim that Defendant Vann should be entitled to governmental immunity even if he did arrest Plaintiff without probable cause. (Dkt. 18, p. 6.) Under Michigan law, a Defendant is entitled to governmental immunity if:

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed he was acting, within the scope of his authority,

(b) The acts were undertaken in good faith, or were not undertaken with malice, and

(c) The acts were discretionary as opposed to ministerial.

*Odom v. Wayne Cnty.,* 482 Mich. 459, 480 (2008).

Under Michigan law an officer's decisions regarding an arrest are considered both discretionary and within the scope of their authority. *See id.*; *Norris v. Lincoln Park Police Officers*, 292 Mich. App. 574, 579 (2011). Thus, to defeat Defendants' claim of governmental immunity, Plaintiff must show that Defendants "utilized wanton or malicious conduct or demonstrated a reckless indifference to the common dictates of humanity." *Odom*, 482 Mich. at 475.

21

"The good-faith element of [this] test is subjective in nature. It protects a Defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a Defendant who acts with malicious intent." *Id.* at 481-82. Accordingly, to be protected by governmental immunity in the context of a false arrest, a police officer need not have probable cause or even a reasonable belief that there is probable cause. "[A] police officer would be entitled to immunity […] if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken." *Id.* at 482 (citing *Ross v. Cosumers Powers Co.*, 420 Mich. 567 (1984).

Even under this more relaxed standard, Plaintiff's and Defendant Vann's conflicting testimony regarding what Plaintiff told him about his license creates a genuine issue of material fact that undermines Defendant's claim of governmental immunity. A reasonable jury could believe that Plaintiff told Defendant Vann that he had his license in the car's middle compartment. Further, a jury could choose not to credit Defendant Vann's testimony that, whatever was said, his understanding at the time was that Plaintiff did not have his license in his possession. (Dkt. 18, p. 3.) More damaging for Defendant Vann, the jury could also credit Plaintiff's statement that Defendant Vann knowingly prevented Plaintiff from presenting his license – that he knew the driver was trying to show his license but he nevertheless arrested him for having no license. This scenario, if believed, substantially undermines any claims of good faith by the officer. There is a sufficient issue of fact as to Defendant Vann's conduct such that is not entitled to individual governmental immunity.

22

Defendants' Motion for Summary Judgment must therefore be denied as to Plaintiff's false arrest and false imprisonment claims against Defendant Vann.

### 2. Count I: The §1983 Claim

If Defendant Vann arrested Plaintiff without probable cause, this would constitute a violation of Plaintiff's Fourth Amendment rights. *See Gregory*, 444 F.3d at 745. Because the evidence creates a genuine dispute of material fact as to whether Defendant Vann had probable cause to arrest Plaintiff, it also creates a genuine dispute of material fact as to whether Plaintiff's Fourth Amendment rights were violated. However, even if Defendant Vann violated Plaintiff's Fourth Amendment rights, Defendant Vann may be protected from liability by the doctrine of qualified immunity.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the Plaintiff, has the Plaintiff shown that a constitutional violation has occurred? Second, was that right clearly established at the time of the violation?" *Id.* at 538-39. These prongs need not be considered sequentially. *See*

23

*Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Qualified immunity "gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law,'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)), and applies irrespective of whether the official's error was a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *See Pearson*, 555 U.S. at 231.

Viewing the facts in light most favorable to the Plaintiff, a reasonable jury could find that Plaintiff's Fourth Amendment right to be free from arrest without probable cause was violated. Moreover, the right to be free from arrest without probable cause is a clearly established constitutional right. *See Gregory*, 444 F.3d at 745. Accordingly, to defeat Defendant's claim of qualified immunity, there must be sufficient evidence in the record to raise a genuine issue of fact as to whether, under the circumstances, a reasonable officer in Defendant Vann's position would have understood that no probable cause existed to arrest Plaintiff.

If one accepts Plaintiff's version of what happened, which the Court must do at this stage whether it is plausible or not, then Defendant Vann refused to allow Plaintiff to show him his license even after Plaintiff repeatedly told him that he had it on his person. If true, no reasonable officer could have believed that there was probable cause to arrest Plaintiff for driving without a license. Whether Defendant Vann's account or Plaintiff's is more believable is irrelevant. "When the legal

24

question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity."[6] *Bouggess v. Mattingly*, 482 F.3d 886, 888 (6th Cir. 2007); *See also Harris v. Lasseigne*, No. 14-1033, slip. op. at 6 (6th Cir. Feb. 4, 2014) (citing *Younes*, 739 F.3d 885, 889 (6th Cir. 2014) (finding that police officers' statements contradicting the Plaintiff's version of events were "not the type of evidence in the record which 'utterly discredits' the Plaintiff's evidence for the purpose of reviewing qualified immunity)).

This case presents two opposing views of what Plaintiff said to the officer about his license, statements which form the basis of – or disprove – probable cause to arrest. Under such circumstances, if Plaintiff's version is credited, Defendant Vann is not entitled to qualified immunity. Defendants' Motion for Summary Judgment must be denied as to Plaintiff's § 1983 claim against Defendant Vann (Count I) because it is hinges on a question for the jury to resolve.

### III.   CONCLUSION

In sum, Defendants have shown that no genuine issues of material fact remain with respect to Plaintiff's claims for gross negligence (Count II) and

---

[6] The Court has carefully reviewed Plaintiff's deposition testimony. In the absence of evidence which conclusively discredits Plaintiff's version that he informed Defendant Vann that his temporary paper license was inside his cell phone case in the vehicle's center console, there is an issue of fact as to what really happened. There is no video or audio of the arrest in the record. Although Defendant Vann searched the vehicle while Plaintiff was being questioned and states that he did not find the license (Dkt. 18, Ex. D, ¶ 21), Plaintiff's intake and property form states "yes" next to the check box for "cell phone" (Dkt. 22, Ex. G, p. 73), providing support for Plaintiff's assertion that the cell phone, and possibly Plaintiff's driver's license, was available to be examined at the time he was arrested. At the same time, it is not clear from the record how or where the cell phone was found. In all events, Plaintiff maintains that when the cell phone was returned to him upon his release, he opened up its case and showed his paper license to the officer processing him. (Dkt. 22, Ex. G, 183:2-22.) Defendants have not proffered any evidence to the contrary.

intentional infliction of emotional distress (Count V) against both Defendants. As to all of the remaining claims against Defendant City of Lincoln Park, Plaintiff's failure to allege any series of similar violations prevents him from showing there was any constitutional violation that resulted from a policy or custom of the City. Defendant City of Lincoln Park is therefore entitled to governmental immunity under Michigan Law and a grant of summary judgment as to all of Plaintiff's claims. Finally, as to Plaintiff's § 1983 (Count I), false arrest (Count III), and false imprisonment (Count IV) claims, the state of the evidence admits of a genuine issue of material fact on the question of whether Defendant Vann had probable cause to make the arrest. On these claims, therefore, summary judgment may not be granted.

Wherefore, Defendant's Motion for Summary Judgment (Dkt. 18.) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Defendants' motion is **GRANTED** as to all of Plaintiff's claims against Defendant City of Lincoln Park and as to Plaintiff's gross negligence (Count II) and intentional infliction of emotional distress (Count V) claims against Defendant Vann.

Defendants' motion is **DENIED** as to Counts I, III, and IV against Defendant Vann.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  September 8, 2015

**<u>Certificate of Service</u>**

I hereby certify that this Order was electronically submitted on September 8, 2015, using the CM/ECF system, which will send notification to each party.

<u>s/A. Chubb</u>
Case Manager